## Kinter, Appellant, *v.* Pennsylvania Railroad Company.

| 204 | 497 |
|---|---|
| e208 | ¹448 |
| d209 | 429 |
| d 24 SC | ²150 |
| e 24 SC | ¹476 |
| 204 | 497 |
| 211 | ¹622 |
| 204 | 497 |
| d213 | ³162 |
| 214 | ¹388 |
| 204 | 497 |
| d215 | 499 |
| 204 | 497 |
| f 35 SC | ¹490 |
| f 36 SC | ¹290 |
| 204 | 497 |
| {223 | ¹300 |
| {224 | ¹617 |
| 204 | 497 |
| f40SC¹228 | |
| 41SC²233 | |

*Negligence—Railroads—" Stop, look and listen"—Duty of driver of vehicle.*

If a person approaches a railroad in a vehicle, and cannot, from his seat in it, have a view of the tracks, he must get down from it, and walk to where he can have a view.

Where the uncontradicted evidence is that a person driving a wagon approached a grade crossing and stopped at a point where he could not see the track far enough to observe an approaching train, and it also appears that if he had descended from his vehicle and gone forward five feet he could have seen the train, the court will determine as a matter of law that the driver was guilty of contributory negligence.

It is the duty of the driver when about to cross a railroad, if he cannot see the track, to stop, look and listen, and, if necessary, to get out and lead his horses.

Argued Oct. 28, 1902.   Appeal, No. 33, Oct. T., 1902, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., March T., 1901, No. 255, on verdict for defendant in case of Maggie W. Kinter v. Pennsylvania Railroad Company.   Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.

Trespass to recover damages for death of plaintiff's husband. Before STOWE, P. J.

The facts are stated in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*Joseph A. Langfitt*, with him *H. W. McIntosh* and *S. J. Telford*, for appellant, cited : Muckinhaupt v. Erie R. R. Co., 196 Pa. 213 ; Link v. P. & R. R. R. Co., 165 Pa. 75 ; Bard v. P. & R. Ry. Co., 199 Pa. 94 ; Roberts v. Del. & Hudson Canal Co., 177 Pa. 183 ; Gray v. Penna. R. R. Co., 172 Pa. 383 ; Laib v. Penna. R. R. Co., 180 Pa. 503 ; Arnold v. P. & R. R. R. Co., 161 Pa. 1.

*M. W. Acheson, Jr.*, with him *Thomas Patterson* and *James R. Sterrett*, for appellee, cited : Penna. R. R. Co. v. Beale, 73

Pa. 504; Gray v. Penna. R. R. Co., 172 Pa. 383; Gleim v. Harris, 181 Pa. 387; Lehigh Valley R. R. Co. v. Brandtmaier, 113 Pa. 610; Ellis v. Lake Shore, etc., R. R. Co., 138 Pa. 506; Urias v. Penna. R. R. Co., 152 Pa. 326; Aiken v. Penna. R. R. Co., 130 Pa. 380; Myers v. B. & O. R. R. Co., 150 Pa. 386; Roberts v. Del. & Hudson Canal Co., 177 Pa. 183.

OPINION BY MR. JUSTICE BROWN, January 5, 1903:

The deceased was killed at a most dangerous railroad crossing in the borough of Wilkinsburg. The train that struck him was coming from the east. He approached the crossing on South avenue, and to his left—the direction from which the train was coming—the street makes an acute angle with the railroad, on which there were five tracks. In this angle there was a plumbing shop, which obstructed the view of the railroad. It was eight feet and ten inches from the first rail. The through passenger train which collided with the deceased was rapidly approaching on the first track. When about 350 feet from South avenue it crossed over on a switch to the middle, or third, track, on which it ran into the team. In the direction from which the train came there was a straight stretch of over half a mile from the crossing, but there was no point nearer than five feet from the first rail where there could be a view of it. Kinter was driving a two-horse wagon loaded with coal. He was sitting about in the middle of it, and a man named Musser, who was to put the coal away, was on the rear end. There was no view of the tracks to their left as they approached them. When the heads of the horses were at the first rail of the track nearest to him Kinter stopped them. From their positions on the wagon, with the plumbing house alongside of them and cutting off the view to the left, neither man could see the coming train, and their view of the track on which it was rapidly coming was for but 240 feet. They could not even see Wilkinsburg station, barely a square away; but there was a point beyond the house, five feet from the track, from which the deceased could have seen the danger. Neither he nor the man with him went forward to look from this, the only point, from which they could see what was coming upon them, and, in an unguarded moment, the driver started his team and drove on to his death. As soon as he passed the plumbing house, Musser jumped and his life

was saved; but it was too late for Kinter to escape from the deadly peril. With these facts developed, the court below entered a judgment of nonsuit on the ground of the contributory negligence of the deceased.

Negligence is the absence of care under the circumstances. The more imminent the danger, the greater should be the care exercised in the presence of it. The rule upon one about to cross the tracks of a railroad is that he must stop, look and listen. Some crossings are much more dangerous than others, and many of them in towns, with views on either side obstructed by buildings, are, as in the present case, notoriously so. Railroad companies may be regardless of their duty in protecting the public from the constant danger that besets them at such crossings, but the man who drives over them is not, on that account, relieved from the duty of exercising care himself. On the contrary, the very highest degree of it is wisely required of him; and there could be no better illustration than that given by the present case of the wisdom of the rule, that if one approaches a railroad in a vehicle, and cannot, from his seat in it, have a view of the tracks, he must get down from it and walk to where he can. The observance of this rule by Kinter would manifestly have saved his life. Our enforcement of it may save many others; departure from it would send many victims into these death traps.

The duty of Kinter was to stop and look and listen at a place where he could have a view of the tracks which would enable him to see the approaching train: Central R. R. Co. of N. J. v. Feller, 84 Pa. 226; Ely v. Pittsburg, etc., Railway Co., 158 Pa. 233. He did not stop at such a point, and, concededly not having been able to see where he did stop, it was for the court to say that he had not observed the rule requiring him to look. "Where there is a doubt as to the proper place to stop, look and listen, as a general rule such question will be referred to the jury. But where there is no such doubt; where the deceased stopped at a point where he could not see, it is for the court to determine whether it was a proper place:" Urias v. Penna. R. R. Co., 152 Pa. 326.

When it must have been manifest to the deceased as he approached the tracks that he could not have a view to his left, he might have protected himself by exercising ordinary prudence.

Instead of driving his horses on until their feet nearly touched the first rail of the tracks and then stopping and trying to look from his seat in the wagon, where he could not see the danger that was almost upon him, he ought, as a prudent man, to have stopped further back, got down from his wagon, walked forward beyond the obstruction and looked. That this was his duty, is clear from the standpoint of prudence and proper care ; and that we have so repeatedly declared is not uncertain. His failure to observe this duty cost him his life, and has left his widow and children without remedy for the serious consequences which may have resulted from the defendant's negligence.

In Pennsylvania Railroad Co. v. Beale, 73 Pa. 504, where, as here, there was an obstruction to the view of the railroad, we held that, if one driving and about to cross a track cannot have a view of it by looking out from his vehicle, it is his duty to get out, if necessary, and lead his horse and wagon. This principle has been uniformly recognized in later cases. It was reaffirmed the same year, in Pennsylvania Railroad Co. v. Ackerman, 74 Pa. 265, by the same member of this court that had announced it. In Ellis v. Lake Shore, etc., Railroad Co., 138 Pa. 506, attention is called to the rule "that it is the duty of a traveler, when about to cross a railroad, if he cannot see the track, to stop, look and listen, and, if necessary, to get out and lead his horse ; " and in Lehigh Valley Railroad Co. v. Brandtmaier, 113 Pa. 610, we held: " It was the duty of the plaintiff before crossing to stop, look and listen for the approach of trains ; it was his duty to do so immediately before crossing, and, as the learned court instructed the jury, 'if he could not see up and down the track from any point upon the road before reaching the rails, it was his duty to go upon the track itself, and look and listen before attempting to drive his team across.' " The case before us calls for the application of this rule, and it must be enforced. That Kinter passed safely over the first track and was struck on the third can make no difference in the application of the rule, for, if he had observed it, he would have seen not only the train coming towards him on the first track, but the switches as well, leading to the other tracks, over which the train in its regular course might go, and, as a matter of fact, did.

Judgment affirmed.