# Serfas, Appellant, *v.* Lehigh & New England Railroad Co.

*Negligence—Railroads—Automobiles—Darkness — Headlight — Absence of warning sign—Stop, look and listen—Grade crossing—Railroad siding.*

1. Darkness is no excuse for failure to stop, look and listen, before driving upon the tracks of a railroad at a grade crossing.

2. It is the duty of a chauffeur traveling by night to have such a headlight as will enable him to see in advance the face of the highway and to discover grade crossings, or other obstacles in his path, in time for his own safety, and keep such control of his car as will enable him to stop and avoid obstructions that fall within his vision.

3. So far as relates to the duty to stop, look and listen, there is no distinction between a siding and the main track of a railroad.

4. The fact that the driver of an automobile stopped upon the track at a grade crossing is not a compliance with the rule to stop, look and listen, as the required stop must be made before the track is reached.

5. The misplacement or even absence of a warning sign will not excuse a traveler's failure to stop, look and listen.

Argued March 7, 1921. Appeal, No. 83, Jan. T., 1921, by plaintiff, from judgment of C. P. Northampton Co., Sept. T., 1918, No. 71, for defendant n. o. v., in case of Emma A. Serfas v. Lehigh & New England Railroad Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Trespass for death of plaintiff's husband. Before STEWART, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $15,000. The court entered judgment for defendant n. o. v.: See 17 Northampton Co. R. 276. Plaintiff appealed.

*Error assigned,* inter alia, was judgment, quoting it.

*C. F. Smith,* of *Smith, Paff & Laub,* for appellant.— The case was for the jury: Kassarda v. L. V. R. R., 222 Pa. 146; Wingert v. Ry., 262 Pa. 21; Hauser v. R. R., 147 Pa. 440; Knox v. Ry., 202 Pa. 504; Longenecker v. R. R., 105 Pa. 329; Daubert v. R. R., 199 Pa. 345.

*Edward J. Fox,* with him *James W. Fox,* for appellee. —Deceased was guilty of contributory negligence: Anspach v. Ry., 225 Pa. 528; McGrath v. R. R., 71 Pa. Superior Ct. 1; Thompson v. R. R., 263 Pa. 569; Kemmler v. Penna. Co., 265 Pa. 212; Smith v. McAdoo, 266 Pa. 328.

OPINION BY MR. JUSTICE WALLING, April 18, 1921:

This suit grows out of a grade crossing accident. There is an improved public highway extending from Bath easterly to Nazareth, in Northampton County; about 80 rods north of this road is the plant of the Penn Allen Cement Company. To reach the plant from its main line, defendant has a switch crossing the highway at grade. On the evening of December 5, 1917, plaintiff's husband, Lloyd Serfas, while driving a Peerless automobile easterly upon this highway, accompanied by his brother, was struck and killed by a gondola car which, with other cars, was being backed from the plant over this crossing. The trial judge submitted the case to the jury, who found for plaintiff, but later entered judgment for the defendant on the whole record; from which the former brought this appeal.

To vindicate the judgment, it is only necessary to consider the question of contributory negligence. The deceased, who was familiar with the road and crossing, was driving from fifteen to twenty miles per hour and admittedly did not stop until upon the track, and then only because of a shout from the rear brakeman, who saw the impending collision, which instantly resulted. The deceased openly violated the inflexible rule requiring the traveler to stop, look and listen before entering

upon a railroad track. The only excuse offered is the darkness, which is insufficient. There was possibly some slight artificial light there from a trolley car standing near by and from electric lights on a high pole; but, entirely aside from this, it is the duty of a chauffeur traveling by night to have such a headlight as will enable him to see in advance the face of the highway and to discover grade crossings, or other obstacles in his path, in time for his own safety, and to keep such control of his car as will enable him to stop and avoid obstructions that fall within his vision. For example, it is the chauffeur's duty to keep his car under such control that whenever his headlight has brought a grade crossing into view he can stop before reaching it. Such crossing is not invisible by day nor, when an auto is equipped with proper lights, by night; in either case the chauffeur must discover its presence and stop before driving thereon. We have never held darkness an excuse for failure to perform this absolute duty, but the contrary: Anspach v. Phila., etc., Ry. Co., 225 Pa. 528; Eline v. Western Maryland Ry. Co., 262 Pa. 33. In the language of our Brother KEPHART in McGrath v. Penna. R. R. Co., 71 Pa. Superior Ct. 1, 3: "It is the duty of the driver of a car, driving on a dangerous highway on a dark, stormy night, to have his car under such control that he may stop or turn it away when objects intercepting his passage come within range of the rays of light from his lamps. If he drives so fast that he cannot avoid what ordinary prudence would make a known obstruction, he is guilty of negligence." In the case at bar, the lights were burning on deceased's car, the crossing planks and rails were before him as were the light colored concrete sides of the bridge just beyond and the warning sign post on the southeast corner eight feet from the rail; so there was ample on the ground to disclose to him the presence of the crossing, without reference to any notice given by, or of his ability to see or hear, the approaching train. Should we hold that the traveler

need not stop to look and listen because of darkness, then we should logically extend the same immunity in case of a fog or snow storm, or when the crossing was dimmed by dust or otherwise, even in the daytime. To so hold would suspend the rule when needed most, and practically destroy it. To this we cannot consent. In the language of Chief Justice PAXSON in Greenwood v. Railroad Co., 124 Pa. 572, 577: "The rule itself is so valuable; is sustained by such abundant authority; and is moreover founded upon such excellent common sense reasons, that we will neither depart from it, nor allow it to be undermined by exceptions. It is a clear and certain rule of duty, and a departure from it is more than evidence of negligence; it is negligence per se"; or, as stated by Mr. Justice MITCHELL in Aiken v. P. R. R. Co., 130 Pa. 380, 395: "It is not a rule of evidence, but a rule of law, peremptory, absolute and unbending; and the jury can never be permitted to ignore it, to evade it, or to pare it away by distinctions and exceptions." To like import is Follmer v. Penna. R. R. Co., 246 Pa. 367; Atlantic R. Co. v. N. Y. C. & St. L. R. R. Co., 67 Pa. Superior Ct. 320, and many other cases.

So far as relates to the duty to stop, look and listen, there is no distinction between a siding and a main track: Peoples v. Penna. R. R. Co., 251 Pa. 275.

The fact that Mr. Serfas stopped upon the track was of course no compliance with the rule, as the required stop must be made before it is reached: Benner v. Phila. & R. Ry. Co., 262 Pa. 307; Gordon v. Director General of Railroads, 268 Pa. 497.

It is urged for plaintiff that the warning signpost was set on the wrong side of the track, but, as the evidence on her behalf is that such sign was entirely obscured by the darkness, the deceased could not have been prejudiced or misled thereby. The misplacement or even absence of a warning sign will not excuse the traveler's failure to stop, look and listen; the rule applies the same as when the gates are up, and in either event he must stop.

The case of Wanner v. Phila. & R. Ry. Co., 261 Pa. 273, is not parallel to this. There Wanner was a passenger with no knowledge of the crossing; and, in addition, the latter was so constructed that it could not be seen in time to stop the auto.

In the case at bar, the trial court exonerated the defendant from the charge of negligence, but as to that we express no opinion.

The judgment is affirmed.